

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
vs. ) No. SD37401
)
ALAN D. HANELINE, ) **Filed: November 29, 2023**
)
    Defendant-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF PHELPS COUNTY

The Honorable Ronald D. White, Senior Judge

### **AFFIRMED**

Alan D. Haneline appeals the judgment entered following a jury verdict in the Circuit Court of Phelps County ("trial court") convicting him of one count of child molestation in the first degree (Count I) and one count of child molestation in the fourth degree (Count II). In five points on appeal, Mr. Haneline argues: (1) the trial court erred in admitting the State's expert witness's testimony because the State failed to disclose her statements; (2) the trial court plainly erred in submitting the verdict director on Count I because Mr. Haneline was denied his right to a unanimous jury verdict in that the elements could have been met by any of the multiple acts for which there was evidence; (3) the trial court plainly erred in submitting the verdict director for Count II because Mr.

1

Haneline was denied his right to a unanimous jury verdict in that the elements could likewise have been met by multiple acts for which there was evidence; (4) the trial court erred in entering a judgment of conviction as to child molestation in the fourth degree because there was insufficient evidence to find him guilty; and (5) the trial court plainly erred in "reading Instruction Number 6, the verdict director for Count II, to the jury" because the instruction permitted the jury to find Mr. Haneline guilty of a crime that did not exist, exposing him to an *ex post facto* law. After considering his arguments, we affirm the trial court's judgment.

### Factual Background and Procedural History

Mr. Haneline's convictions arise from the sexual abuse of his step-granddaughter, Victim. Victim was born in February of 2002. She spent every other weekend, sometimes once a month, throughout her childhood with her maternal grandmother and Mr. Haneline. Mr. Haneline's property included a small house and a cabin about one or two miles apart. Victim grew very close to Mr. Haneline and remained so until she was fourteen years of age.

In January of 2017, Victim and Mr. Haneline were together in the cabin hunting coyotes from a bedroom window. While Victim was laying on the bed, Mr. Haneline crawled into bed next to her and began rubbing her back. He wrapped his hands around her and started talking to her as if it was a normal conversation about the day. He then put his hands down her pants and up her shirt. He grabbed her breasts and touched her genitals. Mr. Haneline directed Victim to take her pants off and, after she did so, he performed oral sex on her by touching his mouth to her genitals and "penetrating" her vagina.

2

Victim disclosed the incident with Mr. Haneline to her paternal grandmother on January 20, 2017, before she turned 15 years old, and said he "was doing things to her that she didn't like and she had asked him to quit." Her paternal grandmother informed Victim's mother, and Victim's mother called Victim's father. Victim's father made a phone call to law enforcement, and they took her to the sheriff's department in Texas County. Victim eventually participated in two forensic interviews at the Children's Advocacy Center where she disclosed the sexual abuse.

Rowdy Douglas, Chief Deputy for the Texas County Sheriff's Department, interviewed Mr. Haneline. Mr. Haneline denied the allegations, but told Deputy Douglas, "Well, the only thing we ever did a few times was talk about sex questions. She'd ask me sex questions." Mr. Haneline stated that Victim asked him how one would have sex without getting pregnant, and he told her to get birth control. He also admitted to making comments about how big Victim's breasts were getting. During a search of the cabin, the Sheriff's department found "a bunch of washcloths."

Based on Victim's disclosures, a grand jury indicted Mr. Haneline on one count of child molestation in the first degree, alleging that "between January 1, 2009 and January 20, 2017, . . . the defendant knowingly subjected [Victim] . . . who was less than twelve years old to sexual contact by performing oral sex on her[.]" The grand jury later, by superseding indictment, indicted Mr. Haneline with two separate counts of child molestation in the first degree: Count I – class B felony of child molestation in the first degree for "knowingly subject[ing] [Victim] to sexual contact by an act involving his mouth and her genitals" when she was less than 14 years of age; and Count II – class A felony of child molestation in the first degree for "knowingly subject[ing] [Victim] to

3

sexual contact by an act involving his mouth and her genitals" when she was less than 14 years of age. The case proceeded to a jury trial on October 25, 2021.

Victim recounted other instances of sexual abuse at the trial in addition to the incident from January of 2017. She testified that, sometime after 2009 and before December of 2016 when she was around the age of 11 to 13, Mr. Haneline had done the "exact same thing" before. This also occurred at the cabin when they were hunting coyotes and while Victim and Mr. Haneline were "watching Bonanza." Mr. Haneline started "talking about sex" and "boys" and explained she could have sex with him because he could not get her pregnant. Mr. Haneline also told her she could not get pregnant through oral sex and told her he would show her. Again, Mr. Haneline performed oral sex on her by touching his mouth to her genitals.

Victim also testified that Mr. Haneline had vaginal sex with her sometime between December of 2016 and 2017, when she was "around 13" years old. Victim had woken up in the morning to check cows and feed the farm animals with Mr. Haneline. When they were finished with the chores and as she was taking her coat off in the basement, Mr. Haneline stopped her, "kind of like grabbed [her] from behind[,]" and said, "Let's go to the cabin and have a little bit of fun." Mr. Haneline drove Victim to the cabin and, when they walked in, he told her to take her clothes off. Mr. Haneline told her to "just lay on the bed[,]" then he got on top of her. He performed oral sex on her and directed her to touch his genitals and to perform oral sex on him. He then penetrated her vagina with his penis, but she told him he was hurting her and asked him to stop. He told her she could not tell anybody about what happened because he could go to jail. Other than these specific episodes of abuse, Victim explained Mr. Haneline also touched her

4

vagina outside of her clothes in the house when she was younger and groped her when people in the house would not catch it.

Mr. Haneline testified in his defense and denied all of the abuse allegations. He said everything Victim said about sexual abuse "[was] a lie" and argued Victim was lying because her mother owed him $25,000. The jury found Mr. Haneline guilty of child molestation in the first degree (Count I) and the statutory lesser included offense of child molestation in the fourth degree (Count II). The trial court sentenced him to consecutive terms of ten years' imprisonment on Count I and two years' imprisonment on Count II.

## Discussion

For ease of analysis, we address Mr. Haneline's five points on appeal out of order.

### Points Two, Three, and Five – Mr. Haneline waived his right to challenge the verdict directors submitted to the jury.

#### Standard of Review

Mr. Haneline concedes he did not preserve his claims under Points Two, Three, and Five for appeal and therefore asks for plain error review pursuant to Rule 30.20.[1] We may review an unpreserved claim for plain error when the claimed error "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020) (quoting *State v. Clay*, 533 S.W.3d 710, 714 (Mo. banc 2017)). If there is no facial showing of manifest injustice or miscarriage of justice, appellate courts should decline to exercise plain error review. *Id.* at 526. The alleged error must be evident, obvious, and

---

[1] All rule references are to Missouri Court Rules (2023), unless otherwise indicated.

clear; as well as outcome determinative. ***State v. Minor***, 648 S.W.3d 721, 731 (Mo. banc 2022).

For a trial court's jury instructions to constitute plain error, the defendant must demonstrate the court "so misdirected or failed to instruct the jury that the error affected the jury's verdict." ***State v. Celis-Garcia***, 344 S.W.3d 150, 154 (Mo. banc 2011) (quoting ***State v. Dorsey***, 318 S.W.3d 648, 652 (Mo. banc 2010)). Instructional error rarely reaches this level. ***State v. Gannan***, 658 S.W.3d 103, 111-12 (Mo. App. W.D. 2022); ***State v. DeRoy***, 623 S.W.3d 778, 789 (Mo. App. E.D. 2021).

<u>Additional Facts Relevant to Points Two, Three, and Five</u>

During the instruction conference at trial, Mr. Haneline's counsel stated he had no objection to these instructions. Specifically, defense counsel stated: "[The State] and I cooperated pretty well on -- on formulating these instructions, and I think we worked them out by ourselves." The trial court submitted Instruction Numbers 5 and 6 to the jury. Instruction Number 5 alleged Mr. Haneline committed child molestation in the first degree "between January 1, 2009 and January 31, 2016," when he "touched the genitals of [Victim.]" Instruction Number 6 submitted child molestation in the fourth degree, alleging Mr. Haneline, "between December 31, 2016 and January 25, 2017, . . . touched [Victim]'s . . . genitals with his mouth[.]"

<u>Analysis</u>

Mr. Haneline argues under Point Two that:

> The trial court plainly erred in submitting Instruction Number 5, the verdict director for Count I, to the jury, in that the general description of the elements could have been met by any of the multiple acts for which there were evidence. The error meant that Appellant was denied his right to a unanimous jury verdict pursuant to the Missouri and United States Constitutions.

6

Mr. Haneline asserts the same argument in Point Three as to Instruction Number 6, the verdict director for Count II. Both points raise the possibility of having a non-unanimous jury verdict in multiple acts cases. Mr. Haneline maintains his convictions present a multiple acts case because Victim testified about multiple instances of molestation.

Both the Missouri and United States Constitutions protect a criminal defendant's right to be convicted by a jury only upon unanimous agreement. Mo. Const. art. I, Section 22(a); U.S. Const. amend. VI; *Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020). Multiple acts cases can imperil this right because jurors may all agree a defendant is guilty "yet individually choose differing instances of the crime on which they base the conviction." *State v. Brown*, 614 S.W.3d 5, 11 (Mo. App. E.D. 2020) (quoting *State v. Henry*, 568 S.W.3d 464, 470 (Mo. App. E.D. 2019)). "A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *Celis-Garcia*, 344 S.W.3d at 155-56. In this circumstance, "special attention to the verdict director is required to avoid asking the jury to consider evidence of several, distinct criminal acts to determine whether to convict on a single, generally submitted charge." *State v. Adams*, 571 S.W.3d 140, 145 (Mo. App. W.D. 2018). Two recognized ways of resolving the unanimity problem are to either: (1) select the particular criminal act the State will rely on to support its charge, or (2) have the verdict director specifically describe the separate criminal acts at issue and direct the jury to agree unanimously at least one act occurred. *Jarrett v. State*, 572 S.W.3d 143, 150 (Mo. App. S.D. 2019).

7

In Point Five, Mr. Haneline attacks Instruction Number 6 under a different legal theory. He argues:

> The trial court plainly erred in reading Instruction Number 6, the verdict director for Count II, to the jury, in that the instruction permitted the jury to find Appellant guilty of a crime that did not exist at the time encompassed by the instruction, denying Appellant his right to due process and a fair trial, and exposing him to an ex post facto law, in violation of the provisions of the Missouri and United States' Constitutions.

"The prohibition against *ex post facto* laws prohibits any law that provides for punishment for an act that was not punishable when it was committed or that imposes an additional punishment to that in effect at the time the act was committed." *State v. Griffin*, 172 S.W.3d 861, 865 (Mo. App. S.D. 2005) (quoting *State ex rel. Nixon v. Pennoyer*, 39 S.W.3d 521, 522 (Mo. App. E.D. 2001)). A trial court commits plain error when it ignores this prohibition and uses verdict directors that enable a jury to convict the defendant for an act which was not a crime during the charged period. *State v. Miller*, 372 S.W.3d 455, 471 (Mo. banc 2012).

Mr. Haneline insists the trial court plainly erred because Instruction Number 6 charged him with child molestation in the fourth degree committed sometime between December 31, 2016, and January 25, 2017. According to his argument, the jury could have decided Mr. Haneline committed the charged crime on December 31, 2016, but child molestation in the fourth degree was not a crime until January 1, 2017. Section 566.071, RSMo Supp. 2014. Instruction Number 6, to Mr. Haneline's point, thus presents a facial *ex post facto* issue. The jury could have convicted him for a crime one day before the law at issue became effective.

While Mr. Haneline attempts to present valid arguments to this Court, we are unable to reach the merits of Points Two, Three, and Five because Mr. Haneline waived

8

his ability to challenge Instruction Numbers 5 and 6 in any respect. "It is well recognized that 'a defendant cannot complain about an instruction given at his request.'" *Adams*, 571 S.W.3d at 144 (quoting *State v. Bolden*, 371 S.W.3d 802, 806 (Mo. banc 2012)); *State v. Giles*, 926 S.W.2d 227, 228 (Mo. App. E.D. 1996) ("Generally, a defendant may not obtain a new trial on the basis that the court submits an instruction offered by defendant."). A defendant also waives appellate review of instructional errors when he offers an erroneous instruction jointly with the State. *Clay*, 533 S.W.3d at 714. Because Mr. Haneline "cooperated" with the State to create Instruction Numbers 5 and 6, he invited the errors that he now argues may exist in those instructions. He is therefore precluded from objecting to them on appeal.

Mr. Haneline argues the trial court did not make any record "that indicated that the Instructions had been drafted by the parties jointly" and "[d]efense counsel's statement [of cooperation] was made in general, referring to all these instructions, and lacked any specificity as to what form any cooperation took." We disagree with Mr. Haneline's minimization of his trial counsel's contributions to the instructions.

The relevant exchange between the trial court, the State, and defense counsel, before the trial court read the instructions to the jury and before the parties' closing arguments, was:

> THE COURT: All right. [Prosecutor], any other instructions that you wish to offer?
>
> [PROSECUTOR]: No additional instructions by the State, Your Honor.
>
> THE COURT: Any objection or statements you wish to make with respect to the instructions?
>
> [PROSECUTOR]: None, Your Honor.

9

THE COURT: [Defense counsel], any additional instructions that you were requesting?

[DEFENSE COUNSEL]: No, Your Honor.

**THE COURT: Any objections or record that you wish to make with respect to the instructions the Court intends to give?**

**[DEFENSE COUNSEL]: No, Your Honor. [Prosecutor] and I cooperated pretty well on - - on formulating these instructions, and I think we worked them out by ourselves.**

[PROSECUTOR]: Judge, and -- and just simply for the record, I know [defense counsel] talked about converses. He's not choosing any. He talked about lessers within the charged offenses. Based on the statute, if -- there is no other lessers that could be charged based on the statutes there, so and that's why we're with the -- the State's proposed instructions alone. That was off the record.

(Emphasis added). Defense counsel not only failed to object to any of the jury instructions, he confirmed he worked with the State to draft the jury instructions without limitation or clarification. In addition, the parties discussed two separate verdict directors at the end of the first day of trial:

THE COURT: I just wondered if you had any -- any -- if there's anything we can preliminarily get out of the way about the instructions or if you've had time to look at them -- that yet.

[DEFENSE COUNSEL]: I haven't looked at them yet, Your Honor.

THE COURT: Okay. Then I'll just cover it in the morning.

[PROSECUTOR]: And just for your [sic] one thing I'd ask you to look at, [defense counsel], on paragraph first in each of [the instructions], there in the alternative, one says "cabin" and one says "basement." Defendant's -- that's *Apprendi* thing.

[DEFENSE COUNSEL]: Yeah.

[PROSECUTOR]: So had --

THE COURT: It's a what now?

10

[PROSECUTOR]: *Apprendi*. So if a victim can say that things happened in two different spots, the Supreme Court -- Missouri Supreme Court says you need to figure out how to distinguish those.

THE COURT: Oh, you mean to -- okay. To distinguish the two incidents.

From this earlier exchange, we know the State originally proposed two verdict directors that specified Mr. Haneline abused Victim in the "cabin" and again in the "basement." Both of these instructions also asked the jury to find Mr. Haneline committed the alleged acts between January 1, 2009, and January 20, 2017. The State's proposed instructions would have "distinguish[ed] the two incidents" and thereby ensured the jury unanimously agreed on the underlying criminal act supporting each charge. *See **Jarrett***, 572 S.W.3d at 150 (stating a unanimous jury verdict in a multiple acts case can be accomplished with verdict directors which specifically describe the separate criminal acts presented to the jury and the jury being instructed that it must agree unanimously that at least one of those acts occurred).

Ultimately, the trial court did not submit the State's original proposed instructions to the jury. As he admitted, Mr. Haneline's counsel "cooperated" with the State, and did not object to the altered Instruction Numbers 5 and 6. Instruction Numbers 5 and 6, as submitted, did not reference the "cabin" or "basement" as they once had. Instruction Number 5 was changed to specify the criminal act was "touch[ing] the genitals" of Victim, with the charged period of January 1, 2009, to January 31, 2016. Instruction Number 6 distinguished itself from Instruction Number 5 by using a different charged period and asking the jury to find Mr. Haneline touched Victim's genitals "with his mouth[.]" These changes occurred after Mr. Haneline "cooperated" with the State and thus may be imputed to his contributions.

11

Mr. Haneline asks us to conclude the verdict directors were not jointly offered because "Instruction Numbers 5 and 6 explicitly indicated that they were submitted by the State." Both instructions do retain a "Submitted by State" label. Nonetheless, his argument is unavailing where the record otherwise clearly indicates the parties jointly offered the instructional language. *Clay*, 533 S.W.3d at 715 ("[Defendant] argues that the notation 'Submitted by Plaintiff' on the self-defense instruction is proof the instruction was submitted solely by the state. The record, however, shows defense counsel participated in drafting and submitting the self-defense instruction to the trial court."). In *State v. Alvarez*, the defendant's agreement to use different instructional language from what the State originally presented was evidence the final instructions were jointly proffered. 628 S.W.3d 400, 407 (Mo. App. W.D. 2021). We accordingly find the record in this case reflects the State and Mr. Haneline jointly submitted Instruction Numbers 5 and 6. Because the trial record before this Court shows Mr. Haneline contributed to and helped craft the verdict directors submitted to the jury, he waived his ability to challenge them on appeal.

Points Two, Three, and Five are denied.

### Point Four – There was sufficient evidence to convict Mr. Haneline of child molestation in the fourth degree as alleged in Count II.

#### Standard of Review

Like Points Two, Three, and Five, Mr. Haneline failed to preserve this point for appellate review. We must nonetheless review sufficiency of the evidence claims on their merits once raised on appeal. *State v. Lehman*, 617 S.W.3d 843, 847 n.4 (Mo. banc 2021) ("Regardless whether properly set out in a point relied on, sufficiency of the evidence is reviewed on the merits, not as plain error.") (internal quotations and citation

12

omitted); ***State v. Abel***, 590 S.W.3d 872, 874 (Mo. App. S.D. 2019) ("On appeal, sufficiency of the evidence is reviewed on the merits, regardless of whether that issue was raised at trial.").

"Appellate review of sufficiency of the evidence is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." ***State v. Lammers***, 479 S.W.3d 624, 632 (Mo. banc 2016); ***State v. Ingalsbe***, 557 S.W.3d 515, 519 (Mo. App. S.D. 2018). "This Court does not weigh the evidence, but accepts as true all evidence tending to prove guilt with reasonable inferences that support the verdict in determining whether evidence was sufficient to support a conviction and to withstand a motion for judgment of acquittal." ***State v. Brown***, 661 S.W.3d 27, 35 (Mo. App. S.D. 2023).

> When a defendant challenges the denial of his motion for judgment of acquittal occurring before the trial court instructed the jury, as is the case here, "we evaluate whether the State presented sufficient evidence to submit to the jury the cases against the defendant for the charged crimes *without regard* to the form of the verdict director."

***State v. Voss***, 488 S.W.3d 97, 109 (Mo. App. E.D. 2016) (quoting ***State v. Myles***, 479 S.W.3d 649, 660 (Mo. App. E.D. 2015)).

<u>Additional Facts Relevant to Point Four</u>

The second count in the superseding indictment alleged Mr. Haneline committed child molestation in the first degree:

> [I]n that on or about and between the dates of 31 December 2016 and 25 January 2017, in the County of Texas, State of Missouri, the defendant knowingly subjected [Victim] to sexual contact by an act involving his mouth and her genitals, and **at that time [Victim] was less than 14 years of age**, and defendant knew that [Victim] was the defendant's descendant by blood or adoption.

(Emphasis added). At the close of all the evidence, Mr. Haneline moved for a judgment of acquittal on all counts, including Count II. The trial court denied the motion but did not submit Count II as charged in the superseding indictment to the jury. Instead, Instruction Number 6 instructed the jury to find Mr. Haneline guilty of child molestation in the fourth degree (Count II) based on Victim being "less than seventeen years old" at the time of touching.

Analysis

Mr. Haneline argues in Point Four, "[t]he trial court plainly erred in entering a judgment of conviction on Count II, in that at the close of all evidence, the State had failed to elicit sufficient evidence to prove [Mr. Haneline] guilty of Count II as charged in the Indictment." A person commits the offense of child molestation in the first degree, as charged in Count II of the superseding indictment, if he subjects another person who is less than fourteen years of age to sexual contact, and the offense is an aggravated sexual offense. Section 566.067, RSMo 2016.

Mr. Haneline does not contest the "sexual contact" element of child molestation in the first degree or the charged period during which the offense occurred being between December 31, 2016, and January 25, 2017. Mr. Haneline only argues the State did not produce sufficient evidence of Victim being less than fourteen years old at the time of the alleged offense. Victim's age is not in dispute. Her testimony established she was fourteen years old by the end of 2016, and she confirmed her date of birth was in February of 2002. The State does not disagree that Victim was too old for it to seek a conviction for child molestation in the first degree as charged in the superseding indictment. It argues Victim's age does not matter here because the trial court instructed

14

the jury on the lesser included offense of child molestation in the fourth degree. We agree.

The State may not seek to convict a defendant for a crime not charged in the information or indictment unless it is a lesser included offense of the charged offense. *Waggoner v. State*, 552 S.W.3d 601, 607 (Mo. App. W.D. 2018); *State v. Hagan*, 79 S.W.3d 447, 454 (Mo. App. S.D. 2002). The rationale for this exception is that, "for purposes of due process, a defendant is considered to have notice of included offenses of the offense charged." *State v. Collins*, 154 S.W.3d 486, 494 (Mo. App. W.D. 2005). A defendant is always warned of the peril of a conviction for a lesser included offense because it is, by its nature, always included in the charged offense. *See State v. Bumbery*, 492 S.W.3d 656, 661 (Mo. App. S.D. 2016) (holding that "by definition, the State's original information charging Defendant with first-degree arson also charged him with second-degree arson").

An offense is a lesser included offense if:

(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
(2) It is specifically denominated by statute as a lesser degree of the offense charged; or
(3) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein.

Section 556.046.1, RSMo Supp. 2014. Child molestation in the fourth degree satisfies the second condition because it is denominated by statute as a lesser degree of child molestation in the first degree. *Compare* section 566.067, RSMo 2016, *with* section 566.071, RSMo Supp. 2014 (denominating multiple degrees of child molestation). The trial court submitted the offense of child molestation in the fourth degree for the jury's consideration, and the State did not need to prove Victim was less than fourteen years old

15

to seek a conviction for that offense. It had to prove beyond a reasonable doubt Victim was younger than seventeen, which she established by her own testimony. Section 566.071, RSMo Supp. 2014.

We should clarify that Mr. Haneline does not claim there was insufficient evidence to support his conviction for child molestation in the fourth degree. His briefing states, "Admittedly, it could be argued that while the State failed to elicit sufficient evidence to sustain a conviction on Count II as charged, the State did make a submissible case as to some other charge." Mr. Haneline's narrow argument on appeal is the trial court should have followed the example of *Bumbery* by explicitly dismissing Count II from the indictment, while permitting the State to seek a conviction for a lesser included offense.

We do not find that *Bumbery* supports Mr. Haneline's argument here. Like Mr. Haneline, the State charged the defendant in *Bumbery* with arson in the first degree, but a jury found him guilty of a lesser included offense, arson in the second degree. 492 S.W.3d at 659. The defendant argued the trial court erred by "refusing to rule upon" his motions for judgment of acquittal at the close of all evidence. *Id.* at 660. The trial court in *Bumbery* found there was insufficient evidence to support a charge of arson in the first degree, overruled Bumbery's motions for acquittal, allowed the State to file a second amended felony information charging Bumbery with arson in the second degree, and the case was submitted to the jury solely on the second-degree charge. *Id.* at 661. This Court found:

> The trial court made an explicit finding on the record that there was "insufficient evidence to submit an arson first to the jury based on the evidence presented at trial." Thus, the trial court for all intents and purposes *granted* [Bumbery's] motions to the extent of the first-degree arson charge.

16

The gist of [Bumbery's] argument is that, once the motions for judgment of acquittal were filed, the trial court's only option on these facts was to grant the motions because the State failed to prove its first-degree arson case.

*Id.* This Court found no merit in that argument and no error because there was undisputed and sufficient evidence to support a charge of arson in the second degree. *Id.* at 661-62. Because a charge of arson in the second degree is always nested within a charge for arson in the first degree, "the second-degree arson charge was pending when [Bumbery] filed his motion for acquittal at the close of all of the evidence. In ruling on that motion, the trial court was obliged to consider both charges in deciding to what extent, if any, the motion should be granted." *Id.* at 661-62. Similarly, in Mr. Haneline's case, the trial court considered whether there was sufficient evidence to submit child molestation in the first degree, or its lesser included offenses, once Mr. Haneline filed his motion for judgment of acquittal. The trial court then submitted the lesser included offense to the jury. We do not find trial court error in this decision. The lack of an express acquittal for child molestation in the first degree is immaterial given the statutory authorization to convict defendants of lesser included offenses notwithstanding the original language in the indictment or information. Section 556.046, RSMo Supp. 2014.

Point Four is denied.

### *Point One – Mr. Haneline failed to comply with Rule 84.04.*

Mr. Haneline claims in Point One that the trial court erred in admitting the testimony of forensic interviewer Kim Stewart because the State failed to disclose any of her statements and endorsed her "in a and [sic] way that appeared calculated to obscure her testimony[.]" The State retained Ms. Stewart to speak on the process of disclosure and recognition of memories. Without evaluating the propriety of her testimony, we

dismiss Point One because Mr. Haneline failed to comply with the mandatory briefing requirements set forth in Rule 84.04.

Rule 84.04 sets forth briefing requirements for appellate briefs. "Rule 84.04's requirements are mandatory." *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022) (quoting *Fowler v. Mo. Sheriffs' Ret. Sys.*, 623 S.W.3d 578, 583 (Mo. banc 2021)). Although we prefer to decide cases on the merits, excusing technical deficiencies, it is improper to consider a brief "so deficient that it fails to give notice to this Court and to the other parties as to the issue presented on appeal." *Id.* (quoting *J.A.D. v. F.J.D.*, 978 S.W.2d 336, 338 (Mo. banc 1998)). "A point relied on which does not state 'wherein and why' the trial court . . . erred does not comply with Rule 84.04(d) and preserves nothing for appellate review." *Id.* (quoting *Storey v. State*, 175 S.W.3d 116, 126 (Mo. banc 2005)). Points relied on must substantially follow this template:

> The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*].

Rule 84.04(d). Because a template is specifically provided in Rule 84.04(d), there is no excuse for failing to submit an adequate point relied on. *Calzone v. Maries Cnty. Comm'n*, 648 S.W.3d 140, 145 (Mo. App. S.D. 2022) (citing *Steiner v. Rolfes*, 602 S.W.3d 313, 315 (Mo. App. S.D. 2020)).

Mr. Haneline's Point One states as follows:

> The trial court erred in the [sic] admitting the testimony of Kim Stewart. The State's failure to disclose any statements of Stewart and endorsement of her in a and [sic] way that appeared calculated to obscure her testimony constituted a discovery violation. The admission of the testimony was against the logic of the circumstances and resulted in the denial of Appellant's rights to due process and a fair trial. Appellant's convictions should be reversed, and the matter remanded for further proceedings.

18

Point One does not comply with the mandatory requirements of Rule 84.04(d). Instead, Mr. Haneline presents a collection of several sentences in lieu of one complete statement, and he identifies both a challenged trial court action and an alleged bad act by the State as opposed to a single ruling or action by the trial court. The point indicates Mr. Haneline takes issue with the trial court's ruling allowing Kim Stewart to testify, but it does not connect why he is asserting this action was error in the context of the case. To address his claim on the merits would require this Court to piece together his various sentences to reformulate his argument, which places this Court in the position of advocate. That we cannot do. **Waldner v. Dexter R-XI Sch. Dist.**, 647 S.W.3d 321, 323 (Mo. App. S.D. 2022).

"The appellate courts' continued reiteration of the importance of the briefing rules without enforcing any consequence 'implicitly condones continued violations and undermines the mandatory nature of the rules.'" **Minor**, 648 S.W.3d at 728-29 (quoting **Alpert v. State**, 543 S.W.3d 589, 601 (Mo. banc 2018) (Fischer, J. dissenting)). We have already extended Mr. Haneline considerable leeway regarding his other briefing deficiencies, but we decline to extend any further.[2] Point One's drafting is inexcusable here given Mr. Haneline's demonstrated ability to draft Points Two through Five per Rule 84.04(d). Point One is dismissed.

The trial court's judgment is affirmed.

---

[2] Rule 84.04(d)(5) directs appellants to provide a list of cases, not to exceed four, and other legal provisions they are principally relying on immediately following each point on appeal. Mr. Haneline's brief fails to comply in that he did not list a single case as required for any point. We nonetheless reviewed the other points *ex gratia* because the argument portion of his briefing identifies the relevant legal authorities.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS